# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL LUCHINI, | ) | 1:12cv0417 LJO DLB |
| | ) | |
| | ) | ORDER DENYING DEFENDANTS' |
| Plaintiff, | ) | MOTION TO TRANSFER VENUE |
| | ) | |
| v. | ) | (Document 26) |
| | ) | |
| CARMAX, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On May 9, 2012, Defendants CarMax, Inc., CarMax Auto Superstores, Inc., and CarMax Auto Superstores California, LLC, filed the instant motion to transfer venue. Pursuant to Local Rule 230(g), the Court deemed the matter suitable for decision without oral argument.

## BACKGROUND

Plaintiff Michael Luchini, on behalf of himself and classes of those similarly situated ("Plaintiff"), filed this wage and hour complaint on March 21, 2012. Plaintiff filed a First Amended Complaint on April 24, 2012, and Second Amended Complaint ("SAC") on May 29, 2012. Plaintiff names CarMax, Inc., CarMax Auto Superstores, Inc., and CarMax Auto Superstores California, LLC, as Defendants.

On May 9, 2012, Defendants filed the instant motion to transfer venue, requesting that this action be transferred to the Eastern District of Virginia. Plaintiff filed his opposition on May 25, 2012, and Defendants filed a reply on June 8, 2012.

On May 24, 2012, Plaintiff filed a motion for conditional FLSA collective action certification. The motion has been vacated pending the outcome of this motion. On June 6, 2012, Defendants filed a motion to dismiss and/or stay the action based on a prior agreement to arbitrate. That motion has also been vacated.

## FACTUAL ALLEGATIONS

According to the SAC, Plaintiff worked for CarMax as a Buyer-in-Training ("BIT") and a Buyer in Fresno, California. BITs and Buyers, along with Senior Buyers (collectively, "Covered Positions"), share the primary duties of collecting objectively observable information on used vehicles and entering that information into CarMax's computer system to assist the system in calculating a price for purchase.

Defendant CarMax, Inc., and its subsidiary CarMax Auto Superstores, Inc., are Virginia corporations with principal places of business in Richmond, Virginia. CarMax, Inc., and CarMax Auto Superstores, Inc., do business throughout the United States.

Defendant CarMax Auto Superstores California, LLC, is a California subsidiary of CarMax, Inc., with its principal place of business in Richmond, Virginia. It purchases and sells used vehicles throughout California and the surrounding region.

Plaintiff was employed at CarMax in Fresno from 2007 through 2012 as BIT and Buyer. He alleges that he consistently worked overtime hours for which he was not compensated.

Plaintiff alleges that CarMax has unlawfully classified employees in the Covered Positions as exempt from overtime payments under federal and state laws, despite the fact that they should have been classified as nonexempt. Plaintiff alleges that employees in the Covered Positions have worked overtime hours and are entitled to premium compensation for all overtime hours worked.

Plaintiff also alleges that in September 2007, a CarMax employee sued CarMax in California state court alleging similar overtime misclassification under California law on behalf of employees in the Covered Positions. In August 2009, the court approved a class action settlement, providing monetary recovery for California employees in the Covered Positions from 2003 through August 2009. At some point, CarMax then reclassified California BITs to

nonexempt status. However, CarMax willfully failed to reclassify California Buyers, California Senior Buyers and all non-California employees in Covered Positions.

Plaintiff asserts three classes:

1. <u>Nationwide FLSA Plaintiffs</u>: All persons who were, are or will be employed by CarMax nationwide in a Covered Position at any time within the <u>three</u> years prior to the filing of this action through the date of final disposition, and who were, are or will be misclassified as exempt from overtime pay under <u>federal law</u>.

2. <u>California Class</u>: All persons who were, are or will be employed by CarMax in California in a Covered Position at any time within the <u>four</u> years prior to the filing of this action through the date of final disposition, and who were, are or will be misclassified as exempt from overtime pay under <u>California law</u>.

3. <u>ERISA Class</u>: All persons who were, are or will be employed by CarMax nationwide in a Covered Position at any time within the <u>six</u> years prior to the filing of this action through the date of final disposition, and who were, are or will be misclassified as exempt from overtime pay under federal and state laws, and who were, are or will be covered by an ERISA benefit plan.

With these definitions, Plaintiff alleges the following causes of action:

1. First Cause of Action (<u>Nationwide FLSA Plaintiffs</u>) under the Fair Labor Standards Act for failure to pay overtime wages and keep records.

2. Second Cause of Action (<u>California Plaintiffs</u>) under Cal. Labor Code §§ 510 and 1194 for failure to pay overtime wages.

3. Third Cause of Action (<u>California Plaintiffs</u>) under Cal. Labor Code §§ 201, 202 and 203 for failure to timely pay wages.

4. Fourth Cause of Action (<u>California Plaintiffs</u>) under Cal. Labor Code §§ 226, 1174 and 1174.5 for failing to provide itemized wage statements.

5. Fifth Cause of Action (<u>California Plaintiffs</u>) under Cal. Labor Code §§ 218.5, 226.7 and 512 for failure to provide meal and rest periods.

6. Sixth Cause of Action (<u>California Plaintiffs</u>) under Cal. Bus. & Prof. Code § 17200, et seq., for unlawful and unfair business practices.

7. Seventh Cause of Action (<u>California Plaintiffs</u>) under Cal. Labor Code §§ 2698-2699.5 for civil penalties under the California Private Attorneys General Act ("PAGA").

8. Eighth Cause of Action (<u>ERISA Plaintiffs</u>) for failure to maintain records under the Employee Retirement Income Security Act ("ERISA").

9. Ninth Cause of Action (<u>ERISA Plaintiffs</u>) for breach of fiduciary duty under ERISA.

**LEGAL STANDARD**

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "This provision gives a district court broad discretion to transfer a case to another district where venue is also proper." Amini Innovation Corp. v. JS Imports, Inc., 497 F.Supp.2d 1093, 1108 (C.D.Cal.2007). Indeed, "the purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge F.B.L.-585, 364 U.S. 19, 26-27 (1960)).

Therefore, a court considers two prongs when ruling on a motion to transfer: (1) The district where the moving party seeks to transfer must be one where the case might have been brought, and (2) transfer must serve the convenience of the parties and witnesses, and the interests of justice. Adoma v. Univ. of Phoenix, Inc., 711 F.Supp.2d 1142, 1151 (E.D. Cal. 2010). In Jones v. GNC Franchising, Inc., the Ninth Circuit explained that the Court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-499 (9th Cir. 2000); see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.1986) (Court may consider plaintiff's choice of forum, convenience of the parties, convenience of the witnesses, ease of access to the evidence, familiarity of each forum with the applicable law, local interest in the controversy, and administrative difficulties flowing from court congestion in the respective potential forums).

The burden is on the moving party to demonstrate that the balance of conveniences favors the transfer. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

1  A plaintiff's choice of forum is rarely disturbed, unless the balance is strongly in favor of the
2  defendant. Jones, 211 F.3d at 498-499 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508
3  (1947)).

## DISCUSSION

The parties do not dispute that this action could have been brought in the Eastern District of Virginia and this discussion will therefore focus on the second prong of the analysis- whether transfer will serve the convenience of the parties and witnesses, and the interests of justice.

A.   Plaintiff's Choice of Forum

Defendants argue that while a plaintiff's choice of forum is ordinarily entitled to deference, the choice should be given little weight here because this is a national putative class action.

Defendants are correct that the significant deference often accorded to a plaintiff's choice of forum is lessened in a class action where class members are located throughout the country. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). According to Defendants, this action involves 1,510 potential class members "scattered across 29 states," and Plaintiff's choice of forum in this Court is entitled to "little weight." Motion, at 9.

Defendants' analysis, however, is incomplete. Rather than concluding that the choice of forum is entitled to little weight simply because Plaintiff seeks to represent a national class, the courts require further analysis. As the Ninth Circuit explained in Lou v. Belzberg, a shareholder derivative action,

> In judging the weight to be accorded Lou's choice of forum, consideration must be given to the extent of both Lou's and the Belzbergs' contacts with the forum, including those relating to Lou's cause of action. Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.1968). If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, Lou's choice is entitled to only minimal consideration. Id.

Lou, 834 F.2d at 739.

Here, although putative class members may be scattered, the only named Plaintiff resides in this District, and his employment in this District led to this action. Moreover, six of Plaintiff's nine causes of action are brought under California law. Therefore, this is not a case where all

operative facts occurred elsewhere, or where the forum has no interest in the parties or subject matter.

Plaintiff's choice of forum is therefore entitled to some weight and it weighs against transfer. Shultz v. Hyatt Vacation Mktg. Corp., 2011 WL 768735 (N.D. Cal. 2011) (recognizing that deference in the home forum is "somewhat tempered" in a nationwide FLSA class action, but denying transfer to Florida because plaintiff's claims arose within the district, she lived in the district and there were claims under California law); Holliday v. Lifestyle Lift, Inc., 2010 WL 3910143, *6 (N.D. Cal. 2010) (in wage and hour action under the FLSA and California law, affording "some weight" to choice of venue because plaintiff resided and worked in the district); Evancho v. Sanofi-Aventis U.S. Inc., 2007 WL 1302985, *2 (N.D.Cal. 2007) (in wage and hour action under the FLSA and California law, according plaintiffs' choice of venue "some deference" because plaintiffs resided in the district and performed much of their work for defendant in the district).

B.      Convenience of the Parties

Defendants next argue that California is not more convenient for the parties because, according to Defendants' calculations, 84.77% of all putative class members reside outside of California. Declaration of Tom Marcey ("Marcey Dec."), ¶ 13, Exh. 3. Defendants take their calculations a step further using time zones, and explain that 45.43% of putative members are in EST, 33.05% are in CST and only 19.27% are in PST. Breaking this down into even more detail, Defendants contend that 24.44% of the putative class worked in Virginia or the four bordering states, while only 19.27% worked in California and its two bordering states. Marcey Dec., ¶ 13, Exh. 3.

Based on Defendants' calculations, it appears that a majority of the putative class members reside in the eastern-half of the country. This does not necessarily mean that venue in Virginia is more convenient, though. The nationwide class has not yet been certified and basing a convenience determination on unnamed plaintiffs in unknown locations, who may or may not participate, is speculative, at best. What is known, at this point, is that the named Plaintiff and the California Class (approximately 230 of 1510 potential class members) reside in the State of

1  California.[1]  See eg., Shultz, 2011 WL 768735, *7; ("Given that there is no way to know now
2  whether these putative class members will eventually play a role in this case, it would be unduly
3  speculative to place significant weight on their convenience."); Holliday, 2010 WL 3910143, * 7
4  ("While the Court entertains the possibility that class members might reside in districts closer to
5  Michigan than to California, it is premature and misguided to ground a convenience decision on
6  parties who may never need or wish to appear, or to assume the only 'convenience' factor is
7  distance.").

8      Accordingly, this factor weighs against transfer.

9  C.    Convenience of the Witnesses

10      Defendants argue that this factor heavily favors transfer because (1) a majority of the
11  putative class members live in the Eastern states; and (2) Defendants' witnesses will be
12  concentrated in the Eastern District of Virginia because those who made the classification
13  decisions work at corporate headquarters, as do those most knowledgeable regarding job duties,
14  etc.

15      Convenience of the witnesses is one of the most important factors in determining whether
16  to grant a motion to transfer. Meyer Mfg. Co. Ltd. v. Telebrands Corp., 2012 WL 1189765, *6
17  (E.D. Cal. 2012). "In analyzing whether transfer of a case would serve the convenience of the
18  witnesses, the Court must look at who the witnesses are, the nature of what their testimony will
19  be, and why such testimony is relevant or necessary." Flint v. UGS Corp., 2007 WL 4365481, *4
20  (N.D. Cal. 2007).

21      The Court can dispose of Defendants' first argument related to the location of the putative
22  class members based on the discussion above. Defendants contend that because Plaintiff's
23  presumed witnesses, putative class members, are scattered across the United States, no single
24  judicial district is more convenient. Yet as explained above, Plaintiff and the California Class,
25  the only known factors at this point, reside in California.

26

---

27  [1] Plaintiff also submits the Declaration of Jahan C. Sagafi, who explains that to date, 22 former and current
28  CarMax employees have opted in to the FLSA collective action. California and Texas have the most employees, at 7 each. Declaration of Jahan C. Sagafi ("Sagafi Dec."), ¶¶ 7-8.

7

Moreover, in Plaintiff's declaration, he explains that the two Purchasing Regional Vice Presidents that he worked under lived in either California or Arizona. Plaintiff believes that these two executives have substantial information about California's policies governing Buyers' work and timekeeping obligations and practices. Declaration of Michael Luchini ("Luchini Dec."), ¶ 6. Plaintiff also describes a California-specific time-keeping system that was implemented in 2009 and used through at least 2011. Plaintiff indicates that several CarMax managers who implemented these policies work, or worked, in California. Luchini Dec., ¶ 11.

Turning to Defendants' witnesses, Defendants contend that courts routinely transfer class actions to the district where the employer's relevant decision makers and witnesses reside. To support their position, Defendants list 29 employees, by job title, located at corporate headquarters who, "collectively," are employees most knowledgeable on various topics. Marcey Dec., ¶ 12.

In determining the convenience of the witnesses, a court should consider not only the number of witnesses located in the respective venues, but also the nature and quality of their testimony. Sloan v. Pfizer, Inc., 2008 WL 4167083, *5 (N.D.Cal. 2008). While it is likely that a number of employees at corporate headquarters will be witnesses, it is unlikely that all 29 individuals, given the vague descriptions of their positions and the cumulative nature of their testimony, would be called as witnesses. Moreover, Defendants' cases cited in support of their proposition are not persuasive. In each case, either the plaintiffs did not reside in the chosen forum, the workplace events did not occur in the chosen forum or the defendant did not operate in the chosen forum.

In balancing the interests of each parties' witnesses, the Court cannot conclude that this factor tips in favor of either Plaintiff or Defendants. On one hand, Plaintiff will certainly have numerous witnesses from California because he worked here and he asserts California claims on behalf of a California Class. On the other hand, Defendants will present numerous witnesses who live or work in the Eastern District of Virginia. Therefore, regardless of where this action is venued, both parties' witnesses will experience some degree of inconvenience. This factor is therefore neutral. Hammond v. Wal-Mart Stores, Inc., 2011 WL 1668209, *8 (E.D. Cal. 2011)

("Because both parties experience inconvenience, this Court cannot find this factor to favor one party over the other.").

D.   Ease of Access to Evidence

Defendants explain that their corporate records are maintained at headquarters, and therefore the documents needed to litigate a classification issue are located there. Such documents include corporate policies and procedures, job descriptions, payroll records, materials used to train Covered Positions, and computer software used in the appraisal and buying process.

In opposition, Plaintiff contends that written records regarding hours worked and breaks taken or missed, which California Buyers are required to track, are created and kept in California. Plaintiff also argues that key corporate documents housed at corporate headquarters can be copied and sent electronically.

Given that this action involves a California Class asserting California claims for work performed in California, it is likely that a large number of documents are in this State. When combined with the common, accepted practice of electronic document transfer, this factor weighs against transfer. Defendants point out, and the Court recognizes, that some courts minimize the utility of modern discovery practices. However, as the Northern District of California recently explained:

> The reality of electronic communication and transmission at least dilutes the weight given to this convenience factor. Here, defendants explain that individual employees, like Holliday, log their time sheets and other employment information onto an electronic database controlled by a server in Michigan. Technically, employees in California transmit information electronically to Troy where it is, thereafter, electronically "stored." The idea that it would be cumbersome or inefficient to transfer it back electronically to this district begins to approach absurd. This factor, then, is at most neutral.

Holliday, 2010 WL 3910143, *8.

This Court agrees with this approach and finds that this factor weighs slightly against transfer.

E.   Familiarity with Applicable Law

Defendants' argument is based mainly on the fact that the Eastern District of Virginia has already adjudicated whether their Dispute Resolution Agreement precludes litigation of an FLSA

collective action in court. Defendants intend to assert this issue here.

In opposition, Plaintiff contends that this Court is best situated to deal with the California law issues, which comprise six of the nine causes of action.

Neither argument is persuasive. All federal courts are fully capable of applying federal law, and simply because Defendants received a favorable decision in one court does not render that court better suited to hear similar arguments. Also, while this Court may be more familiar with California law than the Eastern District of Virginia, "other federal courts are fully capable of applying California law." Foster v. Nationwide Mut. Ins. Co., 2007 WL 4410408, *6 (N.D. Cal. 2007).

Accordingly, this factor is neutral.

F.   Local Interest in Controversy

Defendants argue that the Eastern District of Virginia has an interest in this action because all classification decisions were made in Richmond. However, the impacts of those policies were felt by all employees in each of the 29 states that CarMax does business. In fact, at 15 stores, CarMax has more stores in California than any other state. Sagafi Dec., ¶ 5. Virginia currently has 8 stores. Id.

The fact that the decisions were made in the Eastern District of Virginia does not outweigh the fact that California, as well as other states, has a strong interest in adjudicating policies that impact its residence. This factor weighs against transfer.

G.   Relative Court Congestion

Citing the weighted filings per judge, Defendants contend that this weighs strongly in favor of transfer. However, while this Court may have the highest weighted filings per judgeship, Defendants have not demonstrated that civil cases do not move through the Court in a timely manner. Nonetheless, recognizing the congestion in this Court, this factor weighs slightly in favor of transfer.

H.     Defendants' Request to Sever

Alternatively, Defendants contend that under Federal Rule of Civil Procedure 21, this Court can sever Plaintiff's federal claims and transfer them. Based on the early stage of these proceedings, however, severance would be premature at this time.

## ORDER

The totality of factors suggest that this case should remain in this District and Defendants' motion to transfer venue is therefore DENIED. Defendants SHALL respond to the SAC within twenty-one (21) days of the date of service of this order.

IT IS SO ORDERED.

Dated:   **June 22, 2012**                          **/s/ Dennis L. Beck**
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE