1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT

8       FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  MICHAEL LUCHINI,                          CASE NO. CV F 12-0417 LJO DLB

11              Plaintiff,                    **ORDER ON DEFENDANTS' MOTIONS TO**
                                              **DISMISS AND TO STAY**
12          vs.                               (Doc. 57.)

13  CARMAX, INC., et al.,

14              Defendants.

15  _____/

16

17                              **INTRODUCTION**

18      Defendants[1] seek to compel to arbitration plaintiff Michael Luchini's ("Mr. Luchini's")

19  individual and representative overtime compensation claims based on arbitration provisions in Mr.

20  Luchini's employment agreement.  With compelled arbitration, defendants seek to dismiss this action

21  or stay it pending arbitration.  Mr. Luchini responds that the arbitration provisions are unenforceable in

22  that they preclude Mr. Luchini's pursuit of substantive rights and are unconscionable.  This Court

23  considered Mr. Luchini's alternative motions to dismiss and stay on the record and VACATES the July

24  24, 2012 hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court STAYS

25  this action pending arbitration of Mr. Luchini's individual claims and DISMISSES without prejudice

26  Mr. Luchini's class, collective and representative claims.

27  _____

28      [1]      Defendants are Carmax, Inc., Carmax Auto Superstores, Inc., and Carmax Auto Superstores California LLC
    and will be referred to collectively as "Carmax."

                                        1

**BACKGROUND**

**Summary**

Carmax buys and sells used vehicles throughout the United States.  During August 2007 to January 2012, Carmax employed Mr. Luchini initially as a buyer-in-training and later as a buyer.  Mr. Luchini primarily collected information on used vehicles and entered that information on Carmax's computer system to assist to calculate Carmax's purchase price for vehicles.  Mr. Luchini claims that he and other buyers worked more than 40 hours a week and more than eight hours a day[2] without overtime compensation required by federal and California law and that Carmax misclassified Mr. Luchini and other buyers as exempt from overtime compensation.  Mr. Luchini proceeds on his Second Amended Complaint ("SAC") to allege federal and California claims arising from Carmax' failure to pay Mr. Luchini and other buyers overtime compensation.  Carmax contends that the SAC's claims are subject to arbitration pursuant its dispute resolution agreement and not amendable to class or representative litigation.  Carmax seeks to compel this action to arbitration and to dismiss it in the absence of subject matter jurisdiction or to stay it pending arbitration.

**Arbitration Agreement**

On August 29, 2007, after he had commenced his Carmax employment, Mr. Luchini signed a Carmax Dispute Resolution Agreement ("arbitration agreement").  The arbitration agreement is two pages attached to Mr. Luchini's employment application and begins with the following bold highlighted text:  "If you wish to be considered for employment . . . you must read and consent to the following agreement.  You will be considered as an applicant when you have signed the Agreement. . . . You will note that if you sign at this time you do have three (3) days to withdraw your consent."

The arbitration agreement provides for arbitration of certain claims:

> Except as set forth below, both CarMax and I agree to settle any and all previously unasserted claims, disputes, or controversies arising out of or relating to my application or candidacy for employment and employment and/or cessation of employment with CarMax, exclusively by final and binding arbitration before a neutral Arbitrator.  By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family Medical Leave Act, and the law

---

[2]    Mr. Luchini claims specifically that "he worked approximately 63 hours per week."

2

of contract and law of tort.

. . .

I understand that I still may exercise my rights under the National Labor Relations Act and file charges with the Equal Employment Opportunity Commission or similar federal, state, or local agency, but that upon receipt of a right-to-sue letter or similar administrative determination, I shall arbitrate any claim I may have against CarMax.

. . .

This Agreement will be enforceable throughout the application process, my employment, and thereafter with respect to any such claims arising from or relating to my application or candidacy for employment, employment or cessation of employment with CarMax. We then must arbitrate all such employment-related claims, and we may not file a lawsuit in court.

The arbitration agreement references Carmax's Dispute Resolution Rules and Procedures ("arbitration rules") and notes: "By consenting to this Agreement, you acknowledge receipt of the Dispute Resolution Rules and Procedures.  You may wish to seek legal advice before consenting to this Dispute Resolution Agreement."  The arbitration agreement continues: "I have read this Agreement and understand that I should read the Dispute Resolution Rules and Procedures prior to accepting an offer of employment with CarMax."

## Arbitration Rules

The Rule 2 of the arbitration rules[3] further addresses claims subject to arbitration:

Except as otherwise limited herein, any and all employment-related legal disputes, controversies or claims arising out of, or relating to, an Associate's application or candidacy for employment, employment or cessation of employment with CarMax or one of its affiliates shall be settled exclusively by final and binding arbitration before a neutral third-party Arbitrator selected in accordance with these Dispute Resolution Rules and Procedures.  Arbitration shall apply to any and all such disputes, controversies, or claims whether asserted against the Company and/or against any employee, officer, alleged agent, director or affiliate company.

All previously unasserted claims arising under federal, state or local statutory, or common law, shall be subject to arbitration.  Merely by way of example, these claims include, but are not limited to, claims arising under . . . the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, as amended . . . the Employee Retirement Income Security Act (ERISA) . . .

. . .

Claims by Associates for state employment insurance benefits (e.g., unemployment

---

[3]  Further references to "Rule" will be to specific enumerated arbitration rules.

3

compensation, workers' compensation, worker disability compensation) claims arising under the National Labor Relations Act, or any claims or disputes by whistleblowers arising pursuant to the Sarbanes-Oxley Act and alleging unlawful retaliation or seeking other relief pursuant to that Act, shall not be subject to arbitration. Other statutory or common law claims alleging that CarMax retaliated or discriminated against an Associate, however, shall be subject to arbitration.

Rule 3 further emphasizes arbitration of claims:

By agreeing to the Dispute Resolution Program, an Associate agrees to resolve through arbitration all claims described in, or contemplated by Rule 2. If an Associate files a lawsuit in court to resolve claims subject to arbitration, the Associate agrees that the Court shall dismiss the lawsuit and require the Associate to arbitrate the dispute.

The arbitration rules further address selection of an arbitrator, conduct of the arbitration hearing, pre-hearing discovery, fees and expenses. Rule 9(f)(ii) bars consolidation of claims of different employees and class actions:

The Arbitrator shall not consolidate claims of different Associates into one proceeding, nor shall the Arbitrator have the power to hear an arbitration as a class action, collective action, or representative action. (A class action involves an arbitration or lawsuit where representative members of a large group who claim to share a common interest seek collective relief.)

### Mr. Luchini's Claims

The SAC alleges that Carmax has unlawfully classified buyers, including Mr. Luchini, "as exempt from overtime payments under federal and state laws" and such employees "have worked overtime hours, as defined by applicable federal and state laws, and are and have been entitled to premium compensation at the appropriate rate . . . for all overtime hours worked." The SAC alleges:

1.  A first claim for failure to pay overtime and record hours worked to violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.;

2.  A second claim for failure to pay overtime to violate California Wage Order No. 4-2001 and California Labor Code sections 510 and 1194;

3.  A third claim for waiting time penalties to violate California Labor Code sections 201-203;

4.  A fourth claim for failure to provide accurate wage and hour statements to violate California Wage Order No. 4-2001 and California Labor Code sections 226, 1174 and 1174.5;

4

1    5.    A fifth claim for failure to provide meal and rest periods to violate California Wage

2          Order No. 4-2001 and California Labor Code sections 218.5, 226.7 and 512;

3    6.    A sixth claim for unfair competition to violate the California Unfair Competition Law

4          ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq.;

5    7.    A seventh claim for penalties under the California Private Attorneys General Act

6          ("PAGA"), Cal. Labor Code, §§ 2698, et seq.;

7    8.    An eighth claim for failure to maintain accurate records for hours worked to violate the

8          Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1059(a)(1); and

9    9.    A ninth claim for breach of fiduciary duties for failure to credit overtime compensation

10         to violate ERISA.

11   In addition to Mr. Luchini, the SAC pursues each of the claims on behalf of other Carmax buyers

12   by asserting class, collective and representative allegations.

13                                          **DISCUSSION**

14         Carmax contends that the arbitration agreement and arbitration rules compel Mr. Luchini to

15   arbitrate the SAC claims and preclude class, collective and representative litigation to warrant dismissal

16   or stay of this action.  Mr. Luchini responds that the arbitration agreement and arbitration rules are

17   unenforceable in that they preclude pursuit of substantive rights and are unconscionable.

18                                       **Arbitration Policy**

19         Arbitration is a way to resolve disputes "that the parties have agreed to submit to arbitration."

20   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920 (1995).  Arbitration clauses

21   limit a court's power: "Our role is strictly limited to determining arbitrability and enforcing agreements

22   to arbitrate, leaving the merits of the claim and any defenses to the arbitrator."  *Republic of Nicaragua*

23   *v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1294

24   (1992); *see Muh v. Newberger, Loeb & Co., Inc.*, 540 F.2d 970, 972 (9th Cir. 1976) (If the parties have

25   agreed to arbitrate, "the entire controversy must be referred to the arbitrator, including the validity of the

26   contract.") A contractually based arbitration "can be brought to conclusion entirely extrajudicially, and

27   . . . the judiciary's supervision is limited to confirming, vacating, or correcting any resultant award."

28   *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal.App.4th 1459, 1468, 35 Cal.Rptr.2d

1 | 200, 205 (1994); *Brock v. Kaiser Foundation Hospitals*, 10 Cal.App.4th 1790, 1806, 13 Cal.Rptr.2d 678

2 | (1992).

3 | ### *Enforcement Of Arbitration Agreements*

4 | The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., applies to written arbitration

5 | agreements in employment cases. Written agreements to arbitrate controversies arising out of an existing

6 | contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

7 | for the revocation of any contract." 9 U.S.C. § 2. "In enacting § 2 of the federal Act, Congress declared

8 | a national policy favoring arbitration and withdrew the power of the states to require a judicial forum

9 | for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland*

10 | *Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858 (1984). "The enactment establishes a strong federal

11 | policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341

12 | F.3d 256, 263 (3rd Cir. 2003). "[F]ederal law presumptively favors the enforcement of arbitration

13 | agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3rd Cir. 1999). The FAA "establishes

14 | that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved

15 | in favor of arbitration, whether the problem at hand is construction of the contract language itself or an

16 | allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hospital v. Mercury*

17 | *Construction*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983).

18 | A federal court is bound to enforce valid agreements to arbitrate:

19 | By its terms, the Act [FAA] leaves no place for the exercise of discretion by a district
court, but instead mandates that district courts *shall* direct the parties to proceed to

20 | arbitration on issues as to which an arbitration agreement has been signed. [9 U.S.C.] §§
3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we

21 | would conclude that agreements to arbitrate must be enforced, absent a ground for
revocation of the contractual agreement.

22 |

23 | *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241 (1985) (italics in original).

24 | With these authorities in mind, this Court turns to the Carmax' and Mr. Luchini's points for and

25 | against compelling this action to arbitration.

26 | ### **Agreement To Arbitrate**

27 | Carmax relies on the arbitration agreement's provision that "CarMax and I agree to settle any

28 | and all previously unasserted claims, disputes, or controversies arising out of or relating to my . . .

1    employment and/or cessation of employment with CarMax exclusively by final and binding arbitration

2    before a neutral Arbitrator." Carmax further relies on Rule 2 that "any and all employment-related legal

3    disputes, controversies or claims arising out of, or relating to an Associate's . . . employment or cessation

4    of employment with CarMax or one of its affiliates shall be settled exclusively by final and binding

5    arbitration . . . . Arbitration shall apply to any and all such disputes, controversies, or claims whether

6    asserted against the Company and/or against any employee, officer, alleged agent, director or affiliate

7    company." Carmax concludes that the SAC's claims are subject to arbitration in that they arise out or

8    relate to Mr. Luchini's "employment and/or cessation of employment with CarMax."

9         As to the determination whether to compel arbitration, "the FAA limits courts' involvement to

10   'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

11   encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)

12   (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000)).

13   "Agreements to arbitrate [may] be invalidated by 'generally applicable contract defenses, such as fraud,

14   duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their

15   meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*,

16   __ U.S. __, 131 S.Ct. 1740, 1746 (2011) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681,

17   687, 116 S.Ct. 1652 (1996)).

18        There is no meaningful dispute whether the arbitration agreement and arbitration rules encompass

19   the SAC's claims. The issue, as framed by Mr. Luchini, "is whether grounds exist at law or in equity

20   for the revocation or modification of the contract containing the arbitration clause." As such, the focus

21   is on whether the arbitration agreement and arbitration rules are enforceable.

22                          **Federal Statutory Claims**

23        Carmax argues that the SAC's first FLSA and eighth and ninth ERISA claims "must be arbitrated

24   on an individualized basis."

25                          ***Availability Of Arbitration***

26        The U.S. Supreme Court has held that "federal statutory claims may be the subject of arbitration

27   agreements that are enforceable pursuant to the FAA because the agreement only determines the choice

28   of forum." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295, n. 10, 122 S.Ct. 754 (2002). "In these cases

we recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, form.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 1647 (1985)).

"[U]nder the FAA the employee's individual agreement to arbitrate all disputes was enforceable with respect to disputes over claims covered by the FLSA." *Albertson's, Inc. v. United Food & Commercial Workers Union, AFL-CIO & CLC*, 157 F.3d 758, 762 (9th Cir. 1998); *see Kuehner v. Dickinson & Company*, 84 F.3d 316, 318 (Congress had not restricted enforceability of contracts to arbitrate FLSA claims).

In addition, courts enforce arbitration of ERISA claims pursuant to arbitration provisions. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725 (9th Cir. 2000) ("Chappel's claim for direct judicial review of the Plan's benefits determination is barred by the Plan's valid and enforceable arbitration clause. The district court properly dismissed his complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim."); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3rd Cir. 1993) ("statutory ERISA claims are subject to compulsory arbitration under the FAA and in accordance with the terms of a valid arbitration agreement"); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.,* 847 F.2d 475, 478 (8th Cir. 1988) ("our examination reveals no congressional intent to single out ERISA claims for exemption from the general federal policy favoring rigorous enforcement of agreements to arbitrate").

In *Bird v. Shearson Lehman/American Exp., Inc.*, 926 F.2d 116, 122 (2nd Cir. 1991), the Second Circuit Court of Appeals explained:

> Arbitration is not inconsistent with the underlying purposes of ERISA. Appellees have not sustained their burden of demonstrating that the text, legislative history, or underlying purposes of ERISA indicate that Congress intended to preclude a waiver of a judicial forum for claims arising under it. Accordingly, we hold that statutory claims arising under ERISA may be the subject of compulsory arbitration.
> . . .
> We hold that Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims. We further hold that the FAA requires courts to enforce agreements to arbitrate such claims.

/ / /

*Class Litigation*

Carmax further argues that agreements to arbitrate FLSA and ERISA claims on an individual basis are enforceable to bar class litigation of such claims. Carmax notes that the FLSA does not override the strong FAA policy to enforce arbitration agreements. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (3rd Cir. 2002) (plaintiff "points to no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute. His inability to bring a class action, therefore, cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); *see also Vilches v. The Travelers Companies, Inc.*, 413 Fed.Appx. 487, 494, n. 4 (3rd Cir. 2011); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (rejecting claim that inability to proceed collectively deprives plaintiffs of substantive rights available under the FLSA; neither FLSA's text nor history supports that the FLSA precludes arbitration). Carmax concludes that since the agreement requires arbitration, such arbitration must be "on an individualized basis."

Mr. Luchini responds that impairment of "a federally recognized substantive right . . . to collective activity in the employment context" renders arbitration unenforceable. Mr. Luchini argues that federal statutes establish "a substantive right to collective action" including "litigation outside the context of a union effort." Mr. Luchini points to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, et seq., and in particular the "mutual aid or protection" clause of 29 U.S.C. 157, which provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . ." Mr. Luchini argues that he exercises his right to engage in "mutual aid and protection" by pursing the SAC's class and related claims and that such right is "a substantive right under the NLRA."

Employees do not lose "their protection under the 'mutual aid or protection' clause when they seek to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship." *Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 565, 98 S.Ct. 2505 (1978). The "mutual aid or protection" clause "protects employees from retaliation by their employers when they seek to improve working conditions through resort to

administrative and judicial forums," and "employees' appeals to legislators to protect their interests as employees are within the scope of this clause." *Eastex, Inc.*, 437 U.S. at 565-566, 98 S.Ct. 2505; *see Brady v. National Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under 29 U.S.C. § 157").

Mr. Luchini points to no federally recognized substantive right to preclude arbitration of his and others' claims. An agreement to arbitrate in itself does not forgo substantive rights afforded by statute. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647. Mr. Luchini offers no meaningful support for a nonwaivable right to class or related action under FLSA or ERISA given the strong Congressional preference for arbitration. *See Adkins*, 303 F.3d at 503. Mr. Luchini's attempt to analogize collective union activity to the SAC's class claims is unavailing. There is no requirement to examine unrelated federal statutes to ascertain whether arbitration would impair substantive rights under the unrelated statutes. The SAC addresses overtime compensation, not collective bargaining and related improvement of working conditions. 29 U.S.C. § 157 and other federal statutes noted by Mr. Luchini address union and related activity not at issue here. Mr. Luchini points to no pertinent authority that the NLRA and similar federal statutes establish a nonwaivable right to class litigation of FLSA and ERISA claims. Mr. Luchini's cited authority does not create a substantive right to collective action as to the SAC's claims, including the SAC's California claims. The SAC's claims on behalf of Mr. Luchini and others are subject to arbitration on an individualized, not a class or similar, basis.

### Unconscionability

Turning to the SAC's California-based claims, Carmax contends that they likewise must be arbitrated on an individual basis in that the arbitration agreement is not unconscionable and offers mutual safeguards to vindicate claims.

"Because unconscionability is a generally applicable defense to contracts, California courts may refuse to enforce an unconscionable arbitration agreement." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (2003), *cert. denied*, 540 U.S. 1160, 124 S.Ct. 1169 (2004). Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486,

1   186 Cal.Rptr. 114 (1982).   A contract to arbitrate is unenforceable under the doctrine of

2   unconscionability when there is "both a procedural and substantive element of unconscionability."

3   *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 783 (9th Cir. 2002).   "Whether an

4   agreement is unconscionable depends on circumstances at the time it was made." *Nyulassy v. Lockheed*

5   *Martin Corp.*, 120 Cal.App.4th 1267, 1280,16 Cal.Rptr.3d 296 (2004).

6                                        *Procedural Unconscionability*

7            Carmax argues that "there is no procedural unconscionability in Plaintiff's consent to the

8   Agreement and Rules."

9            Procedural unconscionability "concerns the manner in which the contract was negotiated and the

10  circumstances of the parties at that time." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App.4th

11  1322, 1329, 83 Cal.Rptr.2d 348 (1999). The procedural element of unconscionability focuses on two

12  factors: oppression or surprise. *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1531, 60 Cal.Rptr.2d 138

13  (1997). Oppression "arises from an inequality in bargaining power which results in no real negotiation

14  and an absence of meaningful choice." *Stirlen*, 51 Cal.App.4th at 1531, 60 Cal.Rptr.2d 138.  "Surprise

15  involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form

16  drafted by the party seeking to enforce them."  *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th

17  846, 853, 113 Cal.Rptr.2d 376 (2001).

18           Carmax contends that the arbitration agreement is easily accessible in that it occupies two pages

19  of Mr. Luchini's employment application which Mr. Luchini initialed.   Carmax points to bold

20  highlighted text to advise to review the arbitration rules and to provide three days to withdraw consent

21  to the agreement.  Carmax notes the agreement's bold highlighted text that the arbitration agreement and

22  arbitration rules "affect your legal rights . . . . You may wish to seek legal advice before consenting to

23  this Dispute Resolution Agreement."  Carmax concludes that Mr. Luchini received adequate notice of

24  the agreement's nature, opportunity to review, and reasonable time to seek legal advice.

25           Mr. Luchini responds that the three-day opt-out period fails to cure procedural unconscionability

26  in that "the only other option under the Agreement is to forego employment with CarMax entirely."

27           Mr. Luchini fails to demonstrate oppression or surprise to support procedural unconscionability.

28  The arbitration agreement comprises the last two pages of Mr. Luchini's employment application and

1   is clearly designated as the "Carmax Dispute Resolution Agreement."  Mr. Luchini offers nothing to

2   suggest that his signing the arbitration agreement equates to oppression.  Mr. Luchini was offered the

3   choice to pursue employment with Carmax subject to the arbitration agreement or forego employment

4   with Carmax.  His continued employment was not dependent on acquiescing to arbitration, similar to

5   the plaintiff in *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106-1107 (9th Cir. 2003), *cert.*

6   *denied*, 540 U.S. 1160, 124 S.Ct. 1169 (2004).  In the end, Mr. Luchini accepted employment with

7   Carmax subject to the arbitration agreement.

8                              ***Mutuality – Substantive Unconscionability***

9          Carmax contends that the arbitration agreement and arbitration rules are mutual and include

10  safeguards to satisfy *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 6 P.3d

11  669 (2000).

12         Substantive unconscionability focuses "on overly harsh or one-sided results."  *Armendariz*, 24

13  Cal.4th at 114, 99 Cal.Rptr.2d 745, 6 P.3d 669. An arbitration clause is substantively unconscionable

14  if "the terms of the agreement . . . are so one-sided as to shock the conscience." *Kinney v. United*

15  *HealthCare Services, Inc.*, 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d 348 (1999).  California courts

16  "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting v. At&T*,

17  319 F.3d 1126, 1149 (9th Cir. 2003) (agreement is unconscionable unless the arbitration remedy contains

18  a "modicum of bilaterality").  A "modicum of bilaterality" appears in an arbitration agreement when

19  "both the employer and plaintiff are bound to submit their claims to arbitration, subject to the same rules

20  and procedures, and the same advantages and disadvantages."  *Fittante v. Palm Springs Motors, Inc.*,

21  105 Cal.App.4th 708, 725, 129 Cal.Rptr.2d 659 (2003).

22                                      ***Armendariz Factors***

23         Carmax argues that the arbitration agreement and arbitration rules are mutual in that they require

24  both Carmax and Mr. Luchini to pursue claims in arbitration without enabling Carmax to pursue claims

25  in court.  Carmax contends that the arbitration agreement and arbitration rules satisfy *Armendariz* factors

26  to invoke arbitration.

27         The California Supreme Court has held that an arbitration agreement covering statutory rights

28  established "for a public reason" must be subjected to particular scrutiny by the courts.  *Armendariz*, 24

                                                    12

Cal. 4th at 100-101, 6 P.3d 669.  Such an agreement is lawful only if it: (1) provides for neutral arbitrators; (2) provides for more than minimal discovery; (3) requires a written award; (4) provides all the types of relief that would otherwise be available in court; and (5) does not require employees to pay unreasonable costs or arbitrator's fees or expenses as a condition of access to the arbitration forum. *Armendariz*, 24 Cal. 4th at 102, 6 P.3d 669 (citing *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

<u>Neutral Arbitrator</u>

Carmax points to the arbitration agreement's requirement of arbitration "before a neutral third-party Arbitrator" and that Rule 5 provides for an established arbitration service to propose a panel of arbitrators from which the service will appoint an arbitrator acceptable to and not stricken by the parties.

There is no dispute that the arbitration agreement and arbitration rules provide for a neutral arbitrator.

<u>Adequate Discovery</u>

Carmax notes that Rule 8 requires the parties' exchange of nonprivileged documents to support claims and defenses and to supplement disclosures and permits up to 20 interrogatories and three depositions along with additional discovery as allowed by the arbitrator.

There is no dispute that the arbitration agreement and arbitration rule provide for adequate discovery.

<u>Written Award</u>

Carmax points to Rule 14 to empower the arbitrator to "award appropriate relief in accordance with applicable law" and Rule 12's requirement of the arbitrator's written award.

There is no dispute as to the written award requirement.

<u>Costs And Expenses</u>

Mr. Luchini argues that the arbitration agreement is unconscionable because the arbitration rules shift litigation expenses to him. "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court."  *Armendariz*, 24 Cal.4th at 110, 99 Cal.Rptr.2d 745.

1    Mr. Luchini challenges an attorney fees award under the arbitration rules in that an arbitrator may

2   award no or minimal attorney fees to a prevailing party.  Rule 13.b. authorizes the arbitrator "to award

3   attorney fees in accordance with applicable law.  In the absence of an award, each Party shall be liable

4   for its own attorney fees."  Rule 14 provides: "If the Arbitrator finds for the Associate, the Arbitrator,

5   in his discretion, may award appropriate relief in accordance with applicable law."

6    Mr. Luchini argues the arbitration rules leave an attorneys fees award to the arbitrator's discretion

7   although the FLSA and California law mandate an attorney fees award.  *See* 29 U.S.C. § 216(b) ("The

8   court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a

9   reasonable attorney's fee to be paid by the defendant, and costs of the action."); Cal. Labor Code, §

10  1194(a) ("any employee receiving less than . . . the legal overtime compensation applicable to the

11  employee is entitled to recover in a civil action . . . reasonable attorney's fees, and costs of suit").

12    Carmax responds that Mr. Luchini "misconstrues" the arbitration rules to "force him to bear

13  expenses that he would not in court."  Carmax points to Rule 10:

14    The Arbitrator shall apply the substantive law of the State in which the Associate
      is, was or sought to be predominantly employed.  For claims arising under federal law,
15    the Arbitrator shall follow the substantive law applicable to the United States District
      Court for the district in which the Associate is or was predominantly employed.

16

17    Mr. Luchini's fears about prevailing attorney fees are unfounded.  The arbitration rules grant the

18  arbitrator discretion to award attorney fees and mandate attorney fees pursuant to applicable federal or

19  California law.  If Mr. Luchini prevails, the arbitrator is obliged to award him attorney fees as required

20  under applicable law.  Moreover, to the extent that there is a conflict with a mandatory attorney fees

21  award, Rule 18 addresses the matter.  Rule 18 provides that in event of a "conflict with a mandatory

22  provision of applicable law, the conflicting Rule or Procedure shall be modified automatically to comply

23  with the mandatory provision of applicable law."  As such, if the FLSA and California Labor Code

24  mandate attorney fees, the arbitrator is bound to award them.

25    Mr. Luchini further faults absence of a provision to award costs to a prevailing plaintiff.  Mr.

26  Luchini contends that he would be required to pay costs associated with court reporters and expert

27  expenses.

28    Carmax notes that Rule 13 obligates Carmax to pay arbitration costs, including filing or

14

1   administrative fees, the arbitrator's fees, renting a room for arbitration but not "incidental costs," such

2   as photocopy charges, and costs to produce witnesses or proof.  This Court construes court reporter

3   expenses as a cost of arbitration, similar to arbitrator fees, and thus to be paid by Carmax.  The expert

4   and related expenses which Mr. Luchini raises are those for which he would be responsible in a court

5   action.  They fail to support unconscionability.  Mr. Luchini reimbursement of costs and expenses

6   available in a court action remain available to Mr. Luchini in arbitration.

7          The arbitration rules' handling of attorney fees and costs does not render the arbitration

8   agreement unconscionable.

9                                   Waiver Of Substantive Rights

10         Mr. Luchini faults Rule 9(f) as a "prospective waiver of substantive employment-related claims."

11  Rule 9.f.i. requires Carmax and employees "to bring all existing claims subject to arbitration in one

12  arbitration proceeding.  Any such claims not brought in one arbitration shall be waived and precluded."

13  Mr. Luchini argues a claim discovered during a pending arbitration is barred.

14         Mr. Luchini fails to demonstrate inability to add or supplement newly discovered claims in a

15  pending arbitration similar to the procedures contemplated by F.R.Civ.P. 15(b)(1) and (d).  The

16  arbitration rules do not preclude additional or supplemental claims.  In fact, Rule 9.f.i. permits additional

17  claims up to 30 days prior to a scheduled arbitration.  In addition, Rule 10 compels adherence to

18  applicable substantive law, including law pertaining to limitation periods.  Mr. Luchini fails to

19  demonstrate shorten limitations periods given the ability to add and supplement claims.

20                               Unilateral Termination Or Alteration

21         Mr. Luchini argues that the arbitration agreement is unconscionable in that Carmax has "a

22  unilateral right to rewrite it."  Mr. Luchini points to Rule 19, which authorizes Carmax to alter or

23  terminate the arbitration agreement and arbitration rules "on December 31 of any year upon giving thirty

24  (30) calendar days written notice to Associates, provided that all claims arising before alteration or

25  termination shall be subject to the Agreement and corresponding Dispute Resolution Rules and

26  Procedures in effect at the time the Arbitration Request Form is received by the Company.  Notice may

27  be given by posting a written notice by December1 of each year at all Carmax locations . . ."

28         Mr. Luchini argues that Rule 19's effect is retroactive application of updated arbitration rules

                                           15

1  "since the applicable rules are those in effect when an employee or former employee submits a CarMax

2  Arbitration Request Form, not when the claim actually accrued." Mr. Luchini relies on *Ingle*, 328 F.3d

3  at 1179, where the Ninth Circuit Court of Appeals held that a similar provision of alteration/termination

4  on 30 days notice was substantively unconscionable given the overall adhesiveness of the employment

5  agreement.  The Ninth Circuit explained: "By granting itself the sole authority to amend or terminate the

6  arbitration agreement, Circuit City proscribes an employee's ability to consider and negotiate the terms

7  of her contract. Compounded by the fact that this contract is adhesive in the first instance, this provision

8  embeds its adhesiveness by allowing only Circuit City to modify or terminate the terms of the

9  agreement." *Ingle*, 328 F.3d at 1179; *see Ramirez-Baker v. Beazer Homes, Inc.*, 636 F.Supp.2d 1008,

10  1022 (E.D. Cal. 2008) ("Where an arbitration agreement provides for the unilateral termination and/or

11  modification by the employer upon thirty days notice to the employee, there can be no meaningful

12  opportunity to negotiate the terms of the agreement, and thus, no agreement by the employee to submit

13  to the new terms of the agreement.")

14      "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any

15  dispute which he has not agreed to submit." *Ingle*, 328 F.3d at 1179 (citing *United Steelworkers of*

16  *America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).  Mr.

17  Luchini is correct that based on Ninth Circuit authority, Rule 19 is substantively unconscionable by

18  negating employee ability to consider and negotiate potential changing arbitration agreement terms.

19  Nonetheless, Rule 19's unconscionability does not render the entire arbitration agreement unconscionable

20  it that the arbitration agreement must be examined as a whole.

21                                          Severance

22      Both procedural and substantive unconscionability must be present for a court to refuse to

23  enforce an arbitration agreement under the doctrine of unconscionability. *Armendariz*, 24 Cal.4th at 114,

24  99 Cal.Rptr.2d 745, 6 P.3d 669.  As noted above, Mr. Luchini fails to demonstrate procedural

25  unconscionability of the arbitration agreement and arbitration rules.  As to substantive unconscionability,

26  Mr. Luchini prevails only on Rule 19's unilateral termination and modification of arbitration rules.

27      "If the court as a matter of law finds that the contract or any clause of the contract to have been

28  unconscionable . . . the court may refuse to enforce the contract, or it may enforce the remainder of the

contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." *Armendariz*, 24 Cal.4th at 121-22, 99 Cal.Rptr.2d 745 (quoting Cal. Civ. Code, § 1670.5(a)). A court has discretion to "refuse to enforce the contract as a whole if it is permeated with unconscionability, or it may strike any single clause or group of clauses which are so tainted or are contrary to the essential purpose of the agreement." *Armendariz*, 24 Cal.4th at 121-22, 99 Cal.Rptr.2d 745.

The arbitration agreement and arbitration rules do not permeate with unconscionability. All but the Rule 19 unilateral termination and modification satisfy mutuality. Because Rule 19 is "collateral to the main purpose of the contract," its severance is proper. Moreover, Mr. Luchini fails to demonstrate implication of Rule 19 to his claims and potential harm to him. By severing Rule 19, the overall purposes of the arbitration agreement and arbitration rules are in tact and effectuated.

Lastly, Rule 18 serves to remedy Rule 19's impropriety in that to the extent any of the rules "conflict with a mandatory provision of applicable law, the conflicting Rule or Procedure shall be modified automatically to comply with the mandatory provision of applicable law." Rule 18 further contributes to compliance with all *Armendariz* factors and to avoid unconscionable results.

**California Class Claims**

Carmax argues that the SAC's California-based claims must be litigated on an individual basis given the arbitration agreement's prohibition on class arbitration or joinder of claims. Carmax contends that FAA purposes to promote arbitration control and agreements to arbitrate wage and hour claims on an individual basis are enforceable.

 "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, __ U.S. __, 131 S.Ct. at 1748. A state "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons," *Concepcion*, __ U.S. __, 131 S.Ct. at 1753, nor can a state "prohibit[ ] outright the arbitration of a particular type of claim," *Concepcion*, __ U.S. __, 131 S.Ct. at1747. A PAGA claim is a state-law claim, and states may not exempt claims from the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

After reviewing the impact of *Concepcion*, a fellow district court observed that "arbitration

1  agreements, including class action waivers contained therein, must be enforced according to their terms."

2  *Jasso v. Money Mart Exp., Inc.*, __ F.Supp.2d __, 2012 WL 1309171, at *10 (N.D. Cal. 2012); *see*

3  *Sanders v. Swift Transp. Co. of Arizona, LLC*, __ F.Supp.2d __, 2012 WL 523527, at * 3 (N.D. Cal.

4  2012) ("as the Supreme Court held recently that state law rules that stand as an obstacle to enforcement

5  of arbitration agreements governed by the FAA . . . are preempted by the FAA, whose purpose is to

6  promote arbitration"); *Lewis v. UBS Financial Services Inc.*, 818 F.Supp.2d 1161, 1167-1168 (N.D. Cal.

7  2011) ("Plaintiff has not demonstrated that the class action waiver is unenforceable" and "the Court

8  concludes that UBS's class action waiver is enforceable").

9         Carmax argues that the SAC's PAGA[4] claims are not subject to class litigation in that courts

10  must enforce arbitration agreements "according to their terms" and the FAA preempts state-law defenses

11  "that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate

12  is at issue." *Concepcion*, __ U.S. __, 131 S.Ct. at 1746; *see Iskanian v. CLS Transp. Los Angeles, LLC*,

13  206 Cal.App.4th 949, 142 Cal.Rptr.3d 372, 385 (2012) ("Following *Concepcion*, the public policy

14  reasons underpinning the PAGA do not allow a court to disregard a binding arbitration agreement. The

15  FAA preempts any attempt by a court or state legislature to insulate a particular type of claim from

16  arbitration."); *Quevedo v. Macy's, Inc.*, 798 F.Supp.2d 1122, 1142 (C.D. Cal. 2011) (plaintiff's "PAGA

17  claim is arbitrable, and that the arbitration agreement's provision barring him from bringing that claim

18  on behalf of other employees is enforceable"); *Grabowski v. Robinson*, 817 F.Supp.2d 1159, 1181 (S.D.

19  Cal. 2011) ("Plaintiff's California Private Attorney General Act claim is arbitrable, and that the

20  arbitration agreement's provision barring him from bringing that claim on behalf of other employees is

21  enforceable"); *see also Morvant v. P.F. Chang's China Bistro, Inc.*, __ F.Supp.2d __, 2012 WL 1604851

22  (N.D. Cal. 2012) ("the Court must enforce the parties' Arbitration Agreement even if this might prevent

23  Plaintiffs from acting as private attorneys general.")

---

24

25  [4]      PAGA provides that certain civil penalties that can be assessed and collected by California's Labor and Workforce Development Agency can be recovered through a civil action brought by an aggrieved employee on behalf of

26  himself or herself and other current or former employees if certain procedural requirements are met. Cal. Lab. Code § 2699(a). It is "fundamentally a law enforcement action designed to protect the public and not to benefit private parties,"

27  wherein the aggrieved employee's action "functions as a substitute for an action brought by the government itself." *Arias v. Super. Ct.*, 46 Cal.4th 969, 986–87, 95 Cal.Rptr.3d 588, 209 P.3d 923 (2009).

28

Mr. Luchini responds that inability to bring a PAGA claim in a representative action equates "to his inability to bring a PAGA claim at all." Mr. Luchini points to *Brown v. Ralphs Grocery Co.*, 197 Cal.App.4th 489, 502, 503, 128 Cal.Rptr.3d 854 (2011), *cert. denied*, __ U.S. __, 132 S.Ct. 1910 (2012), where the California Court of Appeal commented:

> . . . a single-claimant arbitration under the PAGA for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code. . . . That plaintiff and other employees might be able to bring individual claims for Labor Code violations in separate arbitrations does not serve the purpose of the PAGA . . .
>
> . . .
>
> But United States Supreme Court authority does not address a statute such as the PAGA, which is a mechanism by which the state itself can enforce state labor laws, for the employee suing under the PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." (Citation omitted.)

Although the *Brown* rationale is reasonable, federal courts, as noted above, take a different view. *Brown* fails to reconcile the U.S. Supreme Court's directives that the FAA displaces outright state law prohibition of "arbitration of a particular type of claim" and that a state is unable to require a procedure inconsistent with the FAA, "even if it is desirable for unrelated reasons." *Concepcion*, __ U.S. __, 131 S.Ct. at 1748, 1753. Under the FAA, the arbitration agreement, including its class waiver, must be enforced according to its terms, despite the attributes of PAGA. "Indeed, class arbitration was not even envisioned by Congress when it passed the FAA . . ." *Concepcion*, __ U.S. __,131 S.Ct. at 1751. Like other courts, this Court views PAGA as an obstacle to enforcement of arbitration agreements governed by the FAA. As such, this Court is not prepared to preclude arbitration based on the SAC's PAGA claims.

### Injunctive And Equitable Relief

The SAC prays for "equitable and injunctive relief to remedy" Carmax's ERISA violations and fiduciary breaches. The SAC further prays for "equitable and injunctive relief to remedy CarMax's violations of state law," including "enjoining CarMax from continuing its unlawful practices."

Mr. Luchini contends that the SAC's injunctive and equitable claims are not arbitrable "because they are substantive statutory rights that cannot be effectively vindicated in arbitration." Mr. Luchini concludes that an arbitrator lacks "the same power to craft and enforce an injunction that this Court does." Mr. Luchini further argues that equity dooms the arbitration agreement because "it makes it

1   impossible, as a practical matter, for a litigant to pursue statutory claims."

2       These arguments rehash Mr. Luchini's claims that arbitration denies his substantive rights.  As

3   discussed above, arbitration does not negate Mr. Luchini's substantive rights, it merely changes the

4   forum.  Moreover, arbitration does not negate injunctive or equitable relief.  "[I]njunctive relief is not

5   foreclosed by an arbitration because arbitrators enjoy broad equitable powers."  *Owner-Operator*

6   *Independent Drivers Association, Inc. v. Swift Transportation Co., Inc.,* 288 F.Supp.2d 1033, 1037-1038

7   (D. Ariz. 2003).  Rule 14 empowers an arbitrator to "award appropriate relief in accordance with

8   applicable law."  With arbitration, Mr. Luchini is entitled to injunctive and equitable relief under

9   applicable law.

10      In addition, Mr. Luchini's claims that arbitration is more expensive than court litigation are

11  unavailing.  Litigation is expensive be it in court or arbitration.  Arbitration is likely to cover as much

12  or more of the costs than Mr. Luchini would face in a court action.  Widespread cost savings associated

13  with class and related litigation does not diminish the FAA's preemptive effects.  This Court does not

14  take seriously Mr. Luchini's claims that arbitration on "an individual basis will make it practically

15  impossible for him to proceed."  Surely, prior to filing this action, Mr. Luchini's counsel were aware of

16  the arbitration agreement and proceeded knowing the potential to adjudicate Mr. Luchini's claims in

17  arbitration.[5]

18                          **Dismissal Or Stay**

19      Carmax prefers this Court to dismiss this action under F.R.Civ.P. 12(b)(1) for lack of subject

20  matter jurisdiction and/or under F.R.Civ.P. 12(b)(6) for failure to state a claim.  Alternatively, Carmax

21  requests a stay of this action.

22      The FAA directs courts to stay litigation subject to arbitration:

23      If any suit or proceeding be brought in any of the courts of the United States upon any
        issue referable to arbitration under an agreement in writing for such arbitration, the court
24      in which such suit is pending, upon being satisfied that the issue involved in such suit or
        proceeding is referable to arbitration under such an agreement, shall on application of one
25      of the parties stay the trial of the action until such arbitration has been had in accordance
        with the terms of the agreement . . .

26

27          [5]       In his declaration, Jahan Sagafi, Mr. Luchini's counsel, states "we will not prosecute Mr. Luchini's
        individual claim under CarMax's arbitration rules without charge, and we will not advance the required costs."  Assuming
28      such assertion is true, Mr. Luchini's counsel appear poised to withdraw and must do so forthwith if that is their intent.

                                        20

9 U.S.C. § 3.

"[A] court can properly stay a suit before it if *any* issue in the suit is arbitrable, even if some issues are not." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7ᵗʰ Cir.) (italics in original), *cert. denied*, 522 U.S. 912, 118 S.Ct. 294 (1997).   A district court shall stay further proceedings and order arbitration if it determines that: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir.2000); *Lucas v. Gund, Inc.*, 450 F.Supp.2d 1125, 1130 (C.D. Cal. 2006). The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-255, 57 S.Ct. 163 (1936).  As "a matter of its discretion to control its docket," a district court may stay of litigation among non-arbitrating parties pending the outcome of arbitration.  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 20, n. 23, 103 S.Ct. 927 (1983).

As an alternative to a stay, courts may dismiss claims subject to arbitration.  Although the Federal Arbitration Act "provides for a stay pending compliance with a contractual arbitration clause . . . a request for a stay is not mandatory." *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir.1978). A district court may properly entertain a dismissal motion. *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9ᵗʰ Cir. 2004).  "Where the claims alleged in a pleading are subject to arbitration, the Court may stay the action pending arbitration or dismiss the action." *Lewis v. UBS Financial Services Inc.*, 818 F.Supp.2d 1161, 1165 (N.D. Cal. 2011). "The FAA authorizes a court to grant a stay pending arbitration, but it does not 'limit the court's authority to grant a dismissal' where the court requires a plaintiff 'to submit all claims to arbitration.'" *Quevedo*, 798 F.Supp.2d at 1142 (quoting *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir.1988)).  "Thus, even where a party seeks a stay under § 3 [of FAA], the court has discretion to dismiss under Rule 12(b)(6) if it finds that all of the claims before it are arbitrable." *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1178 (C.D. Cal. 2008).

In addition, courts have entertained F.R.Civ.P. 12(b)(1) motions to compel arbitration.  "[A]s

21

long as the party made clear that it was seeking enforcement of the arbitration clause in its motion to dismiss, it had sufficiently 'invoke[d] the full spectrum of remedies under the FAA.'" *See Thompson v. Nienaber*, 239 F.Supp.2d 478, 483 D. N.J. 2002) (quoting *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001); *see Morrison v. Colo. Permanente Med. Group*, 983 F.Supp. 937, 944 (D. Colo.1997); *Hunt v. Up North Plastics, Inc.*, 980 F.Supp. 1046, 1047 (D. Minn.1997); *Trustees of Columbia Univ. v. Local 1199*, 805 F.Supp. 216, 217 (S.D.N.Y.1992).

Carmax notes that if Mr. Luchini is compelled to arbitration on an individual basis, there is no named plaintiff to maintain class litigation to warrant dismissal without prejudice of the opt-in plaintiffs who can, at their option, pursue individual claims against Carmax. Mr. Luchini asks that, if compelled to arbitration, this Court sever the arbitration agreement's class ban and permit the class and related claims to be arbitrated together.

The arbitration agreement contemplates arbitration of claims on an individual, not class or related basis. This Court will not upset the individualized arbitration of claims, and the class and related claims are subject to dismissal. In addition, a stay of this action as to Mr. Luchini's individual claims pending their arbitration is preferable to outright dismissal.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. COMPELS Mr. Luchini's individual claims only to proceed to arbitration and STAYS this action pending arbitration of such claims;

2. DISMISSES without prejudice the SAC's class, collective and PAGA claims in that such claims are not subject to arbitration with Mr. Luchini's individual claims;

3. STRIKES as unconscionable Rule 19 Termination or Modification of Dispute Resolution Agreement or Dispute Resolution Rules and Procedures; and

4. ORDERS the parties, no later than September 24, 2012, to file a joint status report as to the progress of arbitration and the need to continue to stay this action.

IT IS SO ORDERED.

Dated: __July 23, 2012__     _____/s/ Lawrence J. O'Neill_____
                                     UNITED STATES DISTRICT JUDGE